**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


BILJANA PIVAC,

      Plaintiff,


vs.                                         CASE NO. 8:12-CV-66-T-EAK-AEP


COMPONENT SERVICES & LOGISTICS,
INC.,

      Defendant.

_____/


**ORDER ON  MOTION FOR SUMMARY JUDGMENT**


The cause is before the Court on Defendant's motion for summary judgment (Doc. 14);

response thereto (Doc. 15); Defendant's motion to strike certain portions of Plaintiff's sworn

statement filed in opposition to Defendant's motion for summary judgment (Doc. 16) and

response thereto (Doc. 17).  As discussed below, the Court grants the motion to strike, in part,

and grants the motion for summary judgment.


**MOTION TO STRIKE**

The Court will address the motion to strike before it considers the motion for summary

judgment.  The Defendant moves the Court to strike portions of the Sworn Statement of Biljana

Pivac, the plaintiff, filed in opposition to its motion for summary judgment, specifically

Paragraphs 6, 7, 15 and 17.   The initial allegation of the motion is that the Plaintiff's statements

CASE NO. 8:05-CV-1086-T-17-MAP

in Paragraph 7 of the Sworn Statement, that she "returned to the doctor three times in 2012 for

stress, anxiety, and depression," is directly contrary to her deposition and should be stricken.

A party may not create an issue of genuine material fact, when she has given "clear

answers to unambiguous questions" which she "merely contradicts, without explanation,

previously given clear testimony." *Van T. Jenkins and Assoc. v U.S. Indus., Inc.,* 736 F.2d 656,

657 (11th Cir 1984).  "Although there may be some occasions where a party may by affidavit

clarify testimony given in his deposition and thereby create a genuine issue as to a material fact,

we affirm the district court here and hold a district court may find an affidavit which contradicts

testimony on deposition a sham when the party merely contradicts its prior testimony without

giving any valid explanation."  *Van T. Jenkins, at*  657.

Next, the Defendant asserts that the information would not be admissible due to the

Plaintiff's failure to supplement her Rule 26 disclosures or written discovery responses to

"disclose the identity of any healthcare provider who treated her after her deposition or produce

any documents relating to such alleged treatment."  The Defendant also asserts that the

information is irrelevant since it relates to treatment after her release to work and after her

termination. The Court finds that Paragraph 7, is irrelevant and should be stricken, therefore, that

information will not be considered in resolving the pending motion but even if it was relevant, it

clearly contradicts her deposition without any explanation and will not be considered.

CASE NO. 8:05-CV-1086-T-17-MAP

As to the other paragraphs, 6, 15, and 17, the Defendant moves to strike for the same deficiency as to Paragraph 7, direct contradiction with Plaintiff's deposition.   As to Paragraphs 6, 15, and 17, the Court cannot find them to be directly contradictory to her deposition and they will not be stricken.  In regard to Paragraph 6, while the Plaintiff's deposition is extremely unclear as to what the doctor may have actually said or done, the new paragraph 6 is just not that clearly a direct contradiction to the deposition.  As to Paragraphs 15 and 17, the Court does not find them so directly contradictory as to warrant having them stricken either.  As said above, the deposition of the Plaintiff is not clear in many respects, whether due to the Plaintiff's language difficulties or for another reason, and her statements in the Sworn Statement do not directly contradict the fuzzier parts of the deposition.

**MOTION FOR SUMMARY JUDGMENT**

**STANDARD OF REVIEW**

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. **Sweat v. Miller Brewing Co.**, 708 F.2d 655 (11th Cir. 1983).  All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  **Hayden v. First National Bank of Mt. Pleasant**, 595 F.2d 994, 996-7 (5th Cir. 1979), quoting **Gross v. Southern Railroad Co.**, 414 F.2d 292 (5th Cir. 1969).  Factual disputes preclude summary judgment.

CASE NO. 8:05-CV-1086-T-17-MAP

The Supreme Court of the United States held, in **Celotex Corp. v. Catrett**, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548, (1986):

> In our view the plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" **Celotex Corp.**, at p. 274.  As the district court in **Coghlan v. H.J. Heinz Co.,** 851 F.Supp. 808 (N.D. Tex. 1994), summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion,"...the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment...The existence of a mere scintilla of evidence will not suffice...(cites omitted) at 810-811.

The Court must "draw inferences from the evidence in the light most favorable to the non-movant and resolve all <u>reasonable</u> doubts in that party's favor."  **Speciality Malls of Tampa v. The City of Tampa**, 916 F.Supp 1222 (Fla. M.D. 1996).  (emphasis added) A court is not required to allow a case to go to trial "when the inferences that are drawn from the evidence, and upon which the non-movant relies are 'implausible.'" **Mize v. Jefferson City Board of Education**, 93 F.3d 739, 743 (11th Cir. 1996).  A court, however,  may only consider "that evidence which can be reduced to an admissible form," *Rowell v. BellSouth Corp.,* 433 F.3d 794,

CASE NO. 8:05-CV-1086-T-17-MAP

799 (11th Cir. 2005).  The existence of some factual disputes between the litigants will not

defeat an otherwise properly supported summary judgment motion; "the requirement is that there

be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986)(emphasis in original).

The substantive law applicable to the claimed causes of action will identify which facts

are material.  *Id.*  In considering the evidence, the court resolves all reasonable doubts about the

facts in favor of the non-moving party and draws all justifiable inferences in its favor.  *Hickson*

*Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  The court does

not, however, weigh the evidence or make findings of fact.  *Anderson*, 477 U.S. at 249-50.

The party opposing a motion for summary judgment cannot meet his burden by making

general assertions or legal conclusions.  "Neither frivolous assertions nor unsupported statements

nor illusory issues nor mere suspicions will suffice to justify a denial of summary judgment.

**The court may disregard evidence that is too incredible to be believed.**  The evidence offered

by the opposing party must be admissible at trial and must have the force needed to allow a jury

to rely on it."  *Hales v. First Applachian Corp*., 494 F.Supp. 330, 333 (Ala. N.D. 1980).

(emphasis added)

## BACKGROUND AND FACTS

CASE NO. 8:05-CV-1086-T-17-MAP

The Plaintiff filed a two count amended complaint on April 6, 2012.  (Doc. 12).  Count I

is for interference with the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*,

specifically Section 2615 for interfering, restraining, or denying Plaintiff's exercise of the

attempt to exercise her right by inducing the Plaintiff to "submit a document which would

purportedly waive her entitlement to FMLA protection and terminating her as a result."  Count II

is for FMLA retaliation due to the employer terminating her "while on FMLA leave.  The case is

now before the Court on the Defendant's motion for summary judgement.

The following facts are established by the motion, response, and exhibits in this case.

The Court adopts them as true for the purpose of resolving the motion.

Plaintiff, originally from Yugoslavia, has been in this country since August 2002.  She

states that she is proficient in English, she understands and writes English.  (Plaintiff Depo. pgs.

7-8).[1]

Defendant distributes electronic components in St. Petersburg, Florida and the Plaintiff

worked for them as a warehouse clerk from December 5, 2007 until October 18, 2011.  The

Plaintiff stated that, in the year prior to her termination, she worked some overtime, maybe 50

hours a week, and she might have been "overworked" as an explanation as to why she made

mistakes and why her supervisors told her that her work quality had declined.  (Plaintiff Depo.

pgs. 21-24).

Plaintiff's direct supervisor was Tracy Cain, warehouse supervisor, and he reported to

Chris Gear.  (Gear Depo. pgs. 13-14).  Mr. Gear recalled that the Plaintiff's performance

---

[1]The depositions will be referred to by the name of the deponent and the page number
from the deposition.

CASE NO. 8:05-CV-1086-T-17-MAP

evaluation included issues regarding her attendance.  Mr. Gear talked to her about requesting

time off at the end of a month, which was not allowed under the company policy, and her

Internet usage.  (Gear Depo. pgs. 19, 22).  The Plaintiff had also been counseled for having a

picture of a naked woman on her screen saver and her attendance, specifically for taking time off

and making arrangements for time off without prior employer approval, as part of her

performance review. (Torok Depo. pgs. 20, 22-23).

Plaintiff was aware that the company policy allowed her a day and a half every three

months as a personal day, that if you were sick more than two days you needed a doctor's note,

and if you had excessive unpaid leave you might be terminated, but did not know much about the

family and medical leave procedures (Plaintiff Depo. pgs. 18-19).  She was aware near the end of

her employment that she had "very little" of her personal time left to use.  (Plaintiff Depo. pg.

29). Ms. Torok stated that the time off that Plaintiff requested in or about September 2011, was

denied because she had no available personal or vacation time.  (Torok Depo. pgs. 25-26).

At the end of September 2011, the Plaintiff spoke to Bob Hale, HR Generalist (Hale

Depo. pg. 7), in Human Resources to discuss taking two weeks unpaid leave to go visit her

parents.  She was told that she could not be given two weeks of unpaid leave  So she then raised

the issue of family medical leave, which she raised earlier with her supervisor Tracy Cain, for

her "depression and stress and anxiety" and/or the fact that her parents were elderly; the Plaintiff

also thought seeing her parents might help her stress to abate.  She indicated she wanted the

leave to start shortly but it was not a concrete starting time; just soon.  Mr. Hale told her the age

of her parents was not a reason for family medical leave.  However, he told her that, if she had

CASE NO. 8:05-CV-1086-T-17-MAP

health problems, she needed to go to the doctor and do the necessary paperwork and, if her

parents' health required her to go to them, they had to submit the proper paperwork to see if that

would qualify for the family medical leave.  She was given the paperwork that needed to be

filled out if she was requesting family medical leave.  She did not tell Mr. Hale she was

requesting family medical leave.  She only told him she was going to think it over.   (Plaintiff

Depo. pgs. 30-39).

  According to Ms. Torok, the process Mr. Hale followed in a request for family medical

leave started by meeting with an employee to review documents and instruct them on what the

paperwork was for and how to fill it out or have it filled out.  After return of the paperwork, if

the employee was certified Mr. Hale instructed the employee on how implement the leave.

(Torok Depo. pgs 42-43).

  The Plaintiff met with Mr. Hale again seven to ten days after the first meeting and they

discussed the same issue, family medical leave as regarded her parents, because she just wanted

to discuss it again.  Mr. Hale told her, again, and Plaintiff understood, that she needed to fill out

the paperwork.  As evidenced by her statement: "at least two days prior to getting FMLA

documentation, I need to go to the doctor, my parents, for him to fill that out, and he needs to

receive those filled paperwork in 15 days' frame from the date he issued those paperwork."   Mr.

Hale did tell her that he could not say if her request for family medical leave would be approved

but that he needed the paperwork within fifteen days and the decision on the approval would be

made based on what was contained in the paperwork.  The Plaintiff made her decision but didn't

tell Mr. Hale.  She decided not to try for the family medical leave, but to wait until the next year

CASE NO. 8:05-CV-1086-T-17-MAP

and use her vacation time and three more days to visit her parents.  In fact, that is what she did-

visit her parents in January 2012. (Plaintiff Depo. pgs. 41-47).

The Plaintiff first saw Dr. Auerbach in December 2010 for a routine physical.  Then on

October 6, 2011, she called for an appointment and saw Dr. Auerbach that day because she has

been crying for two days, she was feeling depressed, under a lot of stress, and hadn't gotten out

of bed the day before.  Dr. Auerbach did not give her any course of treatment but she told him

she needed about seven days to get herself together and he gave her a "Medically Excused

Absence" form for the dates October 4, 2011 to October 17, 2011.  (Plaintiff Depo. pgs. 55-56;

Ex. 6).  She did not give Dr. Auerbach any paperwork relating to family medical leave.  She

never returned to see Dr. Auerbach since she wanted to "get over these problems on my own."

The Plaintiff could not remember if Dr. Auerbach referred her to anyone for further treatment.

(Plaintiff Depo. pgs. 48,  51, 53-54, 56-59).

The Plaintiff thinks she missed work on October 5th and 6th, 2011, and on October 6th,

called and left a message that she would not be in until the end of the next week and she was told

to bring in her doctor's note on the first date she returned to work.  She believes that Mr. Hale

called her on the Friday and told her he was sending her some paperwork.  After she received the

paperwork, which was related to family medical leave, she called Mr. Hale to see if the doctor

needed to fill out the paperwork.  She expressed that if the doctor needed to fill them out she

could go but preferred not to because she didn't want to incur any more doctor's expense.  The

Plaintiff asserts that Mr. Hale told her that her doctor's note was sufficient "for her leave."  She

did not tell Mr. Hale she wanted to claim family medical leave.  (Plaintiff Depo. pgs. 68, 70, 72-

CASE NO. 8:05-CV-1086-T-17-MAP

73, 75; Exs. 7 and 8).

Plaintiff never completed any FMLA paperwork, in fact she did not even read the

paperwork, because "Mr. Bob Hale told me that my medical note is enough and I don't need to

fill out FMLA paperwork." She understood that Mr. Hale was telling her that in order to be

cleared to return to work on the 17th she just needed a doctor's note. (Plaintiff Depo. pgs. 86-87,

90).

On October 17, 2011, the Plaintiff returned to work and met with Mr. Hale. She told him

"again that because he told me that my doctor's note was enough, I didn't go to the doctor, but if

it was needed I would go to the doctor to fill FMLA papers and, of course, I would fill out the

part I needed to fill out." Plaintiff related that she only said she wasn't asking for family medical

leave because Mr. Hale told her the doctor's note was enough, that she needed to sign the waiver

of FMLA and she would be fine. (Plaintiff Depo. pgs. 92-94). The Plaintiff wrote on the bottom

of the letter, from the paperwork sent to her by Mr. Hale, "I have decided not to use FMLA (due

to financial reasons) from 10/04/11 through 10/17/11." She states that she copied it from

language Mr. Hale wrote out for her on a separate piece of paper. (Plaintiff Depo. pgs. 97-98;

Ex. 10). She understood what she was writing and she understood that it meant that she was not

intending to use or seek FMLA for that period of absence. (Plaintiff Depo. pg. 100).

Mr. Hale's Declaration and deposition verify that the date of the first meeting with the

CASE NO. 8:05-CV-1086-T-17-MAP

Plaintiff meeting was September 21, 2011.  Mr. Hale said that they discussed her parents'

situation and the Plaintiff's reporting that she was depressed.   At that time, he explained "a

serious medical condition" as it related to family medical leave.  He gave her the necessary

paperwork and she told him she'd think about it and bring back the paperwork.  At the second

meeting, Plaintiff asked for a second set of paperwork, due to having lost the first set, and

indicated she still had not made a decision.  When he was told on October 7, 2011, that the

Plaintiff was not returning to work until the 17th, with a doctor's note, he mailed, certified,

registered mail, another set of the paperwork as is required by FMLA policy when an employee

is out three consecutive days due to medical reasons.

      Mr. Hale talked to the Plaintiff and told her to come see him on her return to work, and

told her the doctor's note was fine for her to return to work.  On the 17th, he asked the Plaintiff

about the FMLA paperwork but she said she was better and didn't need the FMLA leave. Mr.

Hale questioned her decision telling the Plaintiff it was "a benefit, job protected leave."  He had

the Plaintiff decline in writing, and at her request wrote out some suggested language.  (Doc. 14-

3, Hale Depo. pgs 11-26).  Mr. Hale informed Ms. Torok on October 17, 2011 that the Plaintiff

declined family medical leave after he "made sure she completely understood what FMLA was"

and that she declined due to a "financial reason."  Ms. Torok did not address the FMLA with the

Plaintiff because Mr. Hale had met with her several times.  While she thought it strange for an

eligible employee not to take the FMLA, Ms. Torok believed that an employee can choose to

take it or not.   (Torok Depo. pgs. 63-66).

      On October 18, 2011, in a meeting with Sandy Torok, Human Resources Director (Torok

CASE NO. 8:05-CV-1086-T-17-MAP

Depo. pg. 11) and Chris Gear, the Plaintiff stated that she was terminated for unpaid leave and for refusing medical leave. (Plaintiff Depo. pgs. 103-104). Mr. Gear did not participate in the decision to terminate the Plaintiff but he agreed with it based on her attendance issues, which he, in fact, had discussed with Ms. Torok. (Gear Depo. pgs. 27-28; Torok Depo. pg. 69). In fact, Ms. Torok made the ultimate decision to terminate the Plaintiff's employment and it was for excessive absenteeism. She spoke with Mike Pointer, her direct supervisor and the company's legal counsel prior to terminating the Plaintiff. (Torok Depo. pgs. 33-34). Sandy Torok discussed the Plaintiff's termination with Mr. Gear, the discussion was about the October 2011 leave and the previous leave taken at the end of a month in 2010. According to the employer's representatives, the Plaintiff's absences were excessive. (Gear Depo. pgs. 45, 49, Torok Depo. pg. 72). When informed she was terminated, the Plaintiff did not respond other than to smile. (Torok Depo. pg. 96).

**DISCUSSION**

The FMLA entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave. Eligible employees are entitled to up to twelve workweeks of leave in a 12-month period (in relevant part) to care for the employee's spouse, child, or parent who has a serious health condition or for a serious health condition that makes the employee unable to perform the essential functions of his or her job. As stated in, 26 U.S.C. §2612:

CASE NO. 8:05-CV-1086-T-17-MAP

(a) In general

> An employer may require that a request for leave under subparagraph (C) or (D) of paragraph (1) or paragraph (3) of section 2612(a) of this title be supported by a certification issued by the health care provider of the eligible employee..., as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.

(b) Sufficient certification

> Certification provided under subsection (a) of this section shall be sufficient if it states -
> (1) the date on which the serious health condition commenced;
> (2) the probable duration of the condition;
> (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;

> (4) (B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee...

The FMLA was enacted by Congress in 1993, in part to address problems arising from "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). It was designed to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and "accomodat[ing] the legitimate interests of employers." 29 U.S.C. § 2601(b)(1)(2); *Callison v. City of Philadelphia,* 430 F.3d 117, 119 (3d Cir. 2005).

As stated above, the FMLA provides in pertinent part that an eligible employee is entitled to up to twelve weeks of medical leave in a year in the event of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). At the end of the leave, the employee has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A); 29 C.F.R. § 825.214(a).

CASE NO. 8:05-CV-1086-T-17-MAP

Pursuant to the Code of Federal Regulations, 29 C.F.R. § 825.113, a "serious health

condition" entitling an employee to FMLA leave, means, in pertinent part, an illness, impairment

or physical or mental condition that involves continuing treatment by a health care provider as

defined in § 825.115. *Wahl v. Seacoast Banking Corp. of Florida*, 2011 WL 861129, at *4

(S.D.Fla., 2011). The standards for stating the two causes of action, interference and retaliation,

are as follows:

> To state a claim of interference with a substantive right, an employee need only
> demonstrate, by a preponderance of the evidence, that she was entitled to the benefit
> denied. *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353–54 (11th Cir.
> 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999). **It is not
> necessary to allege or show that the employer intentionally deprived the employee of
> benefits**; *i.e.* no showing of ill intent is required. *Strickland v. Water Works & Sewer Bd.
> of City of Birmingham,* 239 F.3d 1199, 1208 (11th Cir. 2001); *Smith v. Diffee
> Ford–Lincoln–Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir.2002); *Hoge v. Honda of Am.
> Mfg., Inc.,* 384 F.3d 2388 (6th Cir. 2004). (emphasis added).

> In contrast, to succeed on a retaliation claim, an employee must demonstrate that her
> employer intentionally discriminated against her in the form of an adverse employment
> action for having exercised an FMLA right, and a causal connection between the
> protected conduct and the adverse employment action must be shown. *King,* 166 F.3d at
> 891; *Smith v. BellSouth Telecomm., Inc.,* 273 F.3d 1303, 1314 (11th Cir. 2001).

*Wahl* at *6; *Knox v. Cessna Aircraft Co.*, 2007 WL 2874228, at *4 (M.D. Ga.,2007).  Under a

retaliation claim and in the absence of direct evidence of the employer's intent, the courts apply

a burden-shifting analysis similar to the burden-shifting framework used in evaluating a Title VII

discrimination case.  The employee must allege and establish a statutorily protected activity, an

adverse employment decision and that the decision was causally related to the protected activity.

*Strickland v. Water Works and Sewer Bd.,* 239 F.3d 1199 (11th Cir. 2001).

CASE NO. 8:05-CV-1086-T-17-MAP

The parties in this case certainly have very different interpretations of what has been presented as facts in this case, and, of course, each wants this Court to adopt their interpretation. That is not the role of the Court at this juncture, the interpretation of testimony and making credibility findings are purely the realm of the finder-of-fact, in this case a jury if this case is to go to trial.  The Court must view the evidence in favor of the non-moving party and then determine if there remains a dispute as to a material factual issue.

The first issue raised by the Defendant is if there is a disputed issue as to whether or not the Plaintiff suffered from a serious health condition, which must exist to allow the two counts here pled to proceed.  The Code of Federal Regulations defines, in relevant part, this important aspect of the FMLA at 29 C.F.R. § 825.115:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>>
>> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>>
>> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

CASE NO. 8:05-CV-1086-T-17-MAP

> (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30–day period shall be determined by the health care provider.
>
> (5) The term extenuating circumstances in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30–day period, but the health care provider does not have any available appointments during that time period.

The Plaintiff has failed to actually establish any material issue of fact on this important factor. As stated above, "[t]he party opposing a motion for summary judgment cannot meet his burden by making general assertions or legal conclusions."  The substance of the Plaintiff's "evidence" is that she felt maybe overworked and wanted time off, first to visit her parents, but then just because she was crying and sad.  She went to a doctor who provided her with no treatment, no referrals, no medicine, and no further appointments.  The Plaintiff stated that she "told him [the doctor] she needed about seven days to get herself together and he gave her a 'Medically Excused Absence' form for the dates October 4, 2011 to October 17, 2011."  There is absolutely no evidence presented by the Plaintiff that she met the definition of "serious medical condition" at the time she took the extended unpaid leave.  There are no medical records submitted, no indication of continuing treatment at the time of the Plaintiff's being out of work from the 4th to the 17th of October of 2011, no evidence, other than the Plaintiff's conclusory statements, that she suffered depression and anxiety as chronic health conditions.  In fact, the only thing the Plaintiff has established is that she told the doctor she did not feel like working and he gave her a note to excuse her from working.  There is just nothing here on which to find

CASE NO. 8:05-CV-1086-T-17-MAP

that the Plaintiff suffered a serious medical condition and without that the cause of action may

not proceed.

The Court finds the record presented to be sparse at best but it is what is before the Court

and taking the totality of the presentation in the light most favorable to the non-moving party, as

to the interference and retaliation claims, the Court must find that the Plaintiff has failed to

establish that there are any material issues of fact to try in this case.

**ORDERED** that the motion for summary judgment be **granted** and the Clerk of

Court is directed to enter judgment for the Defendant and against the Plaintiff; to close this case

and to terminate all other pending motions.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 18th  day of March, 2013.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record